IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CR-58-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JEREMY GREENE, | ) | |
| | ) | |
| Defendant. | ) | |

On January 7, 2026, Jeremy Greene ("Greene" or "defendant"), proceeding pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2019) (codified as amended at 18 U.S.C. § 3582) [D.E. 52]. Greene argues that his father's need for a caregiver warrants release. See id. at 6. On May 4, 2026, the government responded in opposition [D.E. 61]. On May 15, 2026, Greene replied [D.E. 62]. As explained below, the court denies Greene's motion for compassionate release.

I.

On December 29, 2022, with a written plea agreement, Greene pleaded guilty to possession with the intent to distribute a quantity of methamphetamine (count six) and possession of a firearm in furtherance of a drug-trafficking crime (count seven). See [D.E. 33]; [D.E. 35] 5–6. On May 24, 2023, the court held Greene's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Sent. Tr. [D.E. 60] 4–5; Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 42]. The court calculated Greene's total offense level to be 23, his criminal history category to be VI, and his advisory guideline range to be 92 to 115 months' imprisonment on count six and 60 months' consecutive imprisonment on count seven. See Sent. Tr. 5–6; PSR ¶¶ 57–71. After considering the arguments of counsel and all relevant factors under

18 U.S.C. § 3553(a), the court sentenced Greene to 102 months' imprisonment on count six and 60 months' consecutive imprisonment on count seven, for a total of 162 months' imprisonment. See Sent. Tr. 6–20; [D.E. 47] 1. Greene did not appeal.

## II.

A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Burleigh, 145 F.4th 541, 547 (4th Cir. 2025); United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Burleigh, 145 F.4th at 547; Hargrove, 30 F.4th at 194.

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See United States v. Washington, 161 F.4th 816, 818 (4th Cir. 2025); Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the

2

law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024); McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See id. § 1B1.13(b). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13(e).

Greene seeks compassionate release under section 3582(c)(1)(A). See [D.E. 52] 4. In support, Greene argues extraordinary and compelling circumstances exist because he is the only

3

available caregiver for his 81-year-old father, who is largely wheelchair-bound, cares for Greene's 16-year-old daughter, and suffers from arthritis, stage V chronic kidney disease, congestive heart failure, hypertension, and type 2 diabetes. See id. at 5–6; [D.E. 52-3] 2–5; [D.E. 62] 1.

As for the "family circumstances" policy statement, section 1B1.13(b)(3)(C) lists in relevant part the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" as an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13(b)(3)(C); see also id. § 1B1.13(b)(3)(B) (same, for defendant's spouse or registered partner). Greene states that, because his paternal half-sister must care for her own 10-year-old daughter, Greene is his father's "sole caretaker." [D.E. 52] 6; see [D.E. 62] 1. Greene explains that his father's "health issues are getting worse" and that his father taking care of Greene's teenage daughter is "beginning to be too much on him and his health." [D.E. 52] 6. Greene's father's doctor states that Greene's father has "poor health," "needs assistance to complete daily tasks," and "uses a scooter for every day activities." [D.E. 52-3] 2–4.

Greene fails to show that his father is "incapacitated" under the policy statement. U.S.S.G. § 1B1.13(b)(3)(C)–(D); see United States v. Rosario-Cruzado, No. 24-6365, 2025 WL 1540932, at *2–3 (4th Cir. May 30, 2025) (unpublished); United States v. Blevins, No. 1:15-CR-3, 2026 WL 497306, at *1–2 (W.D. Va. Feb. 23, 2026) (unpublished); United States v. Clack, No. 5:20-CR-543, 2024 WL 4954305, at *3 (E.D.N.C. Dec. 3, 2024) (unpublished); United States v. Roueche, No. CR07-344, 2024 WL 4665568, at *4 (W.D. Wash. Nov. 4, 2024) (unpublished); Delavan v. United States, No. 4:18-CR-23, 2024 WL 2958956, at *4 (E.D. Va. June 12, 2024) (unpublished); United States v. Harris, No. 5:15-CR-111, 2021 WL 6052284, at *3 (E.D.N.C. Dec. 20, 2021) (unpublished), appeal dismissed, No. 22-6001, 2022 WL 18228332 (4th Cir. Apr. 13, 2022) (unpublished); United States v. Locklear, No. 7:17-CR-60, 2021 WL 5098691, at *4

4

(E.D.N.C. Nov. 2, 2021) (unpublished); United States v. White, No. CR 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021) (unpublished); United States v. Greene, No. 1:17-CR-12, 2020 WL 4475892, at *5 (D. Me. Aug. 4, 2020) (unpublished). Alternatively, although Greene's father's medical conditions are unfortunate, Greene is not the only available caregiver for his father. See Blevins, 2026 WL 497306, at *2; United States v. Taylor, No. 3:08-CR-326, 2026 WL 313469, at *7–8 (E.D. Va. Feb. 5, 2026) (unpublished); Clack, 2024 WL 4954305, at *5; United States v. Gross, No. 1:17-CR-37, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024) (unpublished); United States v. Graff, No. 1:17-CR-20, 2024 WL 3912947, at *2 (W.D. Va. Aug. 23, 2024) (unpublished); United States v. Taylor, No. CR 06-699-3, 2024 WL 3594315, at *6 (D.N.J. July 31, 2024); Delavan, 2024 WL 2958956, at *4; United States v. Milchin, No. 17-284-1, 2023 WL 7544995, at *1 (E.D. Pa. Nov. 13, 2023) (unpublished); United States v. Conrad, No. 20-22, 2023 WL 7301225, at *2 (D. Mont. Nov. 6, 2023) (unpublished); see also PSR ¶ 38 (referencing his local paternal half-sister); [D.E. 62] 1 (same). Thus, reducing Greene's sentence would not comport with U.S.S.G. § 1B1.13(b)(3)(C)–(D).

As for the "other reasons" policy statement, the court assumes without deciding that Greene's father's health issues and Greene's post-sentencing conduct are together extraordinary and compelling reasons under section 3582(c)(1)(A). The section 3553(a) factors, however, do not support reducing Greene's sentence. See Burleigh, 145 F.4th at 549–53; Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Greene is 38 years old and engaged in serious criminal conduct. See PSR ¶¶ 11–20. In June 2020, the New Hanover County Sheriff's Office and the Federal Bureau of Investigation received information from a confidential informant ("CI") about a residence Greene was using as a stash house for a large heroin drug-trafficking organization. See id. ¶ 11. On June 23 and 25,

5

2020, Greene sold two grams of heroin to the CI while armed with a chrome revolver. See id. On June 26, 2020, investigators searched Greene's residence and recovered a .38 caliber chrome revolver loaded with six rounds of ammunition, 81.25 grams of heroin packaged in baggies, 2.34 grams of methamphetamine, $482 in U.S. currency, two AR 22 caliber rifles, a 9mm handgun magazine loaded with seven rounds of ammunition, five units of a Schedule IV controlled substance, various drug paraphernalia, 0.19 grams of marijuana, and seven boxes of ammunition. See id. ¶ 12. A paid escort present during the search told investigators that she and Greene ingested methamphetamine together during her three-day stay at his residence. See id. ¶ 13. During her brief stay, the escort saw "numerous" drug transactions at the residence. See id.

In January 2022, a cooperating defendant ("CD1") told law enforcement that while Greene was on pretrial release with electronic monitoring, Greene sold large quantities of methamphetamine, marijuana, and heroin, and possessed large quantities of U.S. currency, firearms, and drug paraphernalia. See id. ¶ 14. In February 2022, another cooperating defendant corroborated that Greene sold large quantities of methamphetamine, marijuana, and Xanax from the same residence and possessed firearms. See id. On February 7, 2022, CD1 bought 1.75 grams of methamphetamine and 2.53 grams of marijuana from Greene inside his residence, where CD1 observed multiple firearms. See id. ¶ 15. On February 14, 2022, Greene told CD1 that he had methamphetamine ready to sell. See id. ¶ 16.

On February 15, 2022, investigators arrested Greene at a pretrial release office. See id. ¶ 17. Greene had arrived to the office with an associate, who admitted to possessing syringes and marijuana, as well as methamphetamine he purchased from Greene at Greene's residence. See id. The associate also told law enforcement that he intermittently purchased methamphetamine from Greene since Greene's release from jail. See id. Later that day, investigators again searched

6

Greene's residence and recovered hypodermic syringes, 74.81 grams of methamphetamine, 344 units of a Schedule IV controlled substance, one unit of a Schedule III controlled substance, a 9mm magazine, shotgun shells, 14.41 grams of marijuana, various drug paraphernalia, a .38 caliber revolver, a 9mm handgun with an altered serial number, a .380 caliber handgun, various types of ammunition, 0.177 grams of fentanyl, a loaded magazine, and a gun holster. See id. ¶ 18. After his arrest, Greene admitted to law enforcement that he purchased approximately one ounce of methamphetamine per week and purchased various handguns. See id. ¶ 19.

In total, Greene is responsible for distributing 83.25 grams of heroin, 2.377 grams of fentanyl, 78.9 grams of methamphetamine, 349 units of a Schedule IV controlled substance, one unit of a Schedule III controlled substance, and 17.13 grams of marijuana, equaling a converted drug weight of 247.03 kilograms. See id. ¶ 20. Greene also maintained a premises for distributing controlled substances, and possessed six firearms (one stolen and another with an altered serial number) during his illegal drug-trafficking activities. See id.

Greene's criminal conduct was nothing new. His criminal history dates back to 2011 and includes drug offenses and violence. See id. ¶¶ 25–32. Greene has felony convictions for burglary, hit and run involving injury, possession of a firearm by a felon, heroin possession, and possession with intent to manufacture, sell, or deliver a Schedule I controlled substance. See id. ¶¶ 25–28, 30. He also has misdemeanor convictions for possession of drug paraphernalia (twice), hit and run, fleeing or eluding arrest with a motor vehicle, driving while license revoked, reckless driving to endanger, and driving while impaired. See id. ¶¶ 26–27, 29–31. Moreover, Greene has incurred two infractions since entering federal custody—possessing a hazardous tool (i.e., a cell phone) and engaging in disruptive behavior. See [D.E. 61-2] 1. The court views possessing a contraband cell

7

phone as very serious misconduct. See United States v. Melton, 761 F. App'x 171, 173–78 (4th Cir. 2019) (per curiam) (unpublished).

The court has considered the entire record, the section 3553(a) factors, and the parties' arguments. The court has considered Greene's serious criminal conduct and the need to punish Greene for his criminal behavior, to incapacitate Greene, to promote respect for the law, to deter others, and to protect society. The court also has considered Greene's serious misconduct on pretrial release and in prison and his arguments about his rehabilitation and his father's medical circumstances. See [D.E. 52] 5–6; [D.E. 52-3] 2–4; [D.E. 52-4] 2–10; [D.E. 62] 1–3. Having considered the entire record, and the need to punish Greene, the need to promote respect for the law, and the need to deter others, the court denies Greene's motion for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Washington, 161 F.4th at 818; Burleigh, 145 F.4th at 549–53; United States v. Moody, 115 F.4th 304, 314–16 (4th Cir. 2024); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Taylor, 337 F. App'x 342, 343–44 (4th Cir. 2009) (per curiam) (unpublished); United States v. Taylor, No. 22-6795, 2022 WL 17819301, at *1 (4th Cir. Dec. 20, 2022) (per curiam) (unpublished); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

8

## III.

In sum, the court DENIES defendant's motion for a compassionate release [D.E. 52].

SO ORDERED.   This 20 day of May, 2026.

JAMES C. DEVER III
United States District Judge

9